875 F.2d 868
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Appellee.
v.
Khalid Jamil SHABA, Appellant.
 No. 88-1535.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1989.
 
 Before ALAN E. NORRIS and RYAN, Circuit Judges, and CHARLES M. ALLEN*, Senior District Judge.
 PER CURIAM.
 
 
 1
 This case concerns the appeal of the defendant from his jury conviction of unauthorized acquisition and possession of food stamps having a face value of over $100.
 
 
 2
 In June 1987, Leonard Dorsette, an investigative aide for the Department of Agriculture, was given $170 worth of food stamps by Special Agents John Helgeson and Robert W. Wawrzyniak to exchange for cash with an individual who was known to Dorsette as "Mike" and who was later identified as Mufat Shaba. Dorsette was provided with a body transmitter and a microcassette tape recorder so that any conversations which took place could be monitored and recorded. Dorsette then proceeded around the corner in the direction of the Michigan and 31st Street Market where Mike worked.
 
 
 3
 When Dorsette entered the store and inquired, he was told that Mike was not there. The person who told him was identified to Dorsette as "Kelly," Dorsette told Kelly he had some food stamps, and Kelly said he would take care of it. Dorsette then gave Kelly the food stamps which had a value of $170 in return for receiving from Kelly cash in the amount of $110 or $120. The price was not negotiated, and there was testimony that it was common knowledge that the exchange rate on the street was 70% of the face value of the food stamps.
 
 
 4
 A few days subsequent to the meeting between Dorsette and Kelly, Dorsette returned to the market, making a small purchase while Agents Helgeson and Wawryzniak waited outside. After Dorsette rejoined the agents and gave descriptions of the two people inside the store, identifying them as Mike and Kelly, the Agents entered the store on a pretext. They were met by an individual who identified himself as Khalid Shaba, and who matched the description given by Dorsette of the man named Kelly.
 
 
 5
 At trial, the United States produced a tape recording, and Dorsette confirmed that it accurately reflected the brief conversation he and Kelly had at the market. Following voir dire by defense counsel, the tape was received into evidence without objection. Dorsette also testified that he had participated in the preparation of a transcript of the tape recording, and the transcript accurately reflected what appeared on the tape. That transcript included the statement, attributed to Kelly, that is central to this appeal: "I gave you one extra dollar."
 
 
 6
 Before the jury was called, Judge Gilmore and counsel listened to the tape to compare it with the transcript. Judge Gilmore stated that he thought the transcript accurately reflected the tape. Counsel for defendant agreed and said he had no objections. Shortly after the tape was admitted without objection, counsel for appellant stated that he had changed his opinion, and that he was going to object to the transcript's inclusion of the word "dollar" because he could not make that word out on the tape. The trial judge then stated that he would let the jury listen to it, and defendant could argue the matter to the jury.
 
 
 7
 Judge Gilmore gave a cautionary instruction to the jury before the tape was played. He did not explicitly state that the tape was to control in the event of a perceived conflict between the recording and the transcript. The impact of the instruction was the same, however, since it repeatedly emphasized that only the recording was in evidence.[1] Mr. Shaba did not object to the instruction, tender an alternative, or request an additional instruction at the conclusion of the proof.
 
 
 8
 At oral argument, counsel for appellant, in effect, conceded that the only reversible error allegedly committed by Judge Gilmore was in allowing the jury to read the transcript. Reliance is placed upon the case of U.S. v. Robinson, 707 F.2d 872 (6th Cir.1983). Robinson involved 25-30 tape recordings, substantial portions of which were either inaudible or unintelligible. The trial judge did not acknowledge the accuracy of the transcripts. Neither could any witness verify the accuracy of the transcriptions. This Court held that the unintelligible portions of the tapes were so substantial as to make the recording as a whole untrustworthy, and that, therefore, the use of the transcripts at trial was improper.
 
 
 9
 The Robinson case reflects the concern that if the tape recordings, which are evidence, are unintelligible, the transcripts purporting to decipher those tapes will cease being mere aids and will become the evidence. When the inaudible portions are not so substantial as to render the entire recording untrustworthy, the trial court should order deletion of the unreliable portion of the transcript.
 
 
 10
 In light of appellant's failure to object to the introduction of the tape and to object to the cautionary instruction given by the judge when the tape was admitted, appellant has the burden of persuading this court that it was not plain error for the court to follow the procedure it did. This court cannot see any manifest injustice in the introduction of the tape recording or the wording of the cautionary instruction. United States v. Martin, 757 F.2d 770 (6th Cir.1985). In disposing of the issue in this manner, we do not mean to suggest that the trial court abused its discretion.
 
 
 11
 Even if we assume, without deciding, that appellant made timely objection to the jury's use of the transcript as it was written, there is no basis for reversal. In contrast to Robinson, this case reflects that the trial judge listened to the tape, and had no difficulty at all acknowledging the accuracy of the transcript. In contrast to Robinson, this case included a witness who was a participant in the conversation in question, and who confirmed the accuracy of the transcript. Also testifying at trial was another witness who had heard the conversation as it was being transmitted, and he, too, confirmed that the transcript accurately reflected what he had heard.
 
 
 12
 Even Mr. Shaba's counsel, upon hearing the original tape, agreed that the transcript accurately reflected the recording, and it was not until the next day that he reconsidered and decided that the word "dollar" was insufficiently clear. Our attention has not been directed to any indication that appellant cross-examined Dorsette regarding the accuracy of the transcript, preparation of which Dorsette had overseen. In closing argument, appellant's counsel did not question the accuracy of the transcript or refer to any unintelligible portion of the tape. The defense theory did not question that an illegal transaction had taken place, or that it was recorded on the tape; rather, it questioned whether Mr. Shaba was the person who had been involved in that transaction.
 
 
 13
 We note also that the evidence was very strong as to appellant's guilt. Dorsette positively identified defendant and confirmed the illegal purchase.
 
 
 14
 In light of the above, we hold that the trial judge did not err, and that the conviction should be affirmed. In so doing, we note that the other arguments raised by the appellant in his brief are without merit.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Charles M. Allen, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 The instruction given at the time the tape was to be played was as follows:
 Members of the jury, they are going to play a tape now and they are going to give you the transcript of it. Now the transcript is not evidence. That is just to help you listen to the tape. The only evidence before you is the tape itself. So the transcript is merely being given to you to assist you in listening to the tape, but the evidence is the tape itself.